## CIRCUIT COURT OF THE CITY OF RICHMOND

Wells Fargo Alarm Services, Inc.

v.

Virginia Employment Commission
and Claude H. Collier, Jr.

February 27, 1996

Case No. HE-1312-1

BY JUDGE MELVIN R. HUGHES, JR.

Before the court in this case is an employer's Petition for Judicial Review. The Petition appeals a decision of the Virginia Employment Commission (VEC) allowing unemployment benefits to a former employee of Wells Fargo Alarm Services, Inc., the employer. At issue is whether there are sufficient facts to justify the VEC finding that the discharge of the employee, Claude H. Collier, Jr., was for reasons other than misconduct. Also at issue is whether the VEC erred by denying Wells Fargo's request to submit additional evidence and whether the court should remand the matter to the VEC for a hearing on whether there is fraud involved in the proceedings. The facts as revealed in the agency record are summarized as follows.

Collier was employed from September 9, 1991, to April 22, 1994, as a sales representative at a Wells Fargo branch office in Richmond. Wells Fargo sells and installs fire and burglar alarm systems in businesses and homes. As a sales representative Collier earned commissions and bonuses, depending on whether a given transaction is a sale or lease. When a company audit disclosed that a particular transaction Collier handled in 1992 into 1993 should have been categorized as a sale and not a lease, Wells Fargo terminated Collier on April 22, 1994. The audit disclosed that the

transaction was not accompanied by a written contract needed to make the transaction a sale. After the true nature of the transaction was discovered, the branch manager of the Wells Fargo office in Richmond resigned.

The VEC found that while Collier negotiated the arrangement, his supervisors directed him to treat the matter as a lease and approved it. It also found that Collier did not indicate the true nature of the transaction when he had an opportunity to do so believing that his superiors wanted him to keep silent about it if questions were raised. The Commission concluded that even though Collier's testimony suggests he knew he had booked the transaction improperly, viewing the record as a whole, Wells Fargo failed to meet its burden of showing that Collier was discharged for work related conduct. Wells Fargo sought to reopen the case for the purpose of establishing fraud and proffered evidence to support this and other matters in an attempt to have the Commission reverse itself but the VEC refused the request.

It is noted the Decision of Commission states the facts surrounding the improper booking transaction as the basis for its decision. On brief Wells Fargo states there are other facts that would disqualify Collier. These include Collier's violating company policies in other transactions including e.g. not getting legal department approval to use non-standard contract forms. These matters will be discussed *infra* on the issue of the remand.

Under § 60.2-618(2) a claimant is disqualified from receiving unemployment benefits if he or she has been discharged for "misconduct connected with his work." In *Branch v. Virginia Employment Commission*, 219 Va. 609, 611-612 (1978), the Court explained that misconduct is present when an employee:

> deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer.

With respect to the procedural posture of the VEC record on review by petition in the circuit courts, § 60.2-525(A) requires that the VEC factual findings are conclusive absent fraud. See *Virginia Employment Commission v. Gantt*, 7 Va. App. 631 (1989). Accordingly, this court's review is limited to questions of law. See § 60.2-625(A).

On the matter of remand and fraud in the proceedings, there are other guiding principles. In *Jones v. Willard*, 224 Va. 602 (1983), a claim was

made that there was fraudulent evidence submitted to the VEC. In *Jones* the court distinguished the types of fraud needed to be determined before a VEC decision can be challenged as intrinsic or extrinsic. The former includes "perjury, forged documents or other incidents of trial related to issues material to the judgment." *Id.* at 607. The latter is "conduct which prevents a fair submission of the controversy to the court." *Id.* Here, Wells Fargo claims that both intrinsic and extrinsic fraud are present. Intrinsic because Collier committed perjury and extrinsic because Collier conspired with his former supervisor to defraud Wells Fargo and concealed records which Wells Fargo only discovered after Collier departed.

Wells Fargo relies on § 60.2-622 to support its position that the VEC erred by not allowing additional evidence. This section in its pertinent parts states the "[t]he Commission [can] direct the taking of additional evidence." It also cites Regulation VR 300-01-8.3B of the *Regulations and General Rules Affecting Unemployment Compensation* which sets out well known conditions for allowing after or newly discovered evidence. While Wells Fargo concedes that the statute and regulation permit the taking of additional evidence only if the evidence is material, not cumulative and could not have been presented regularly through the exercise of due diligence and the evidence is likely to produce a different result, it urges that in light of Collier's fraudulent testimony (including his failure to disclose the denial by the Virginia Department of Labor and Industry of his wage claim on the ground of misconduct), the VEC erred by not permitting additional testimony of two company officials and related documentary evidence.

In support of the contention that the VEC should have allowed the additional evidence, Wells Fargo details how there was a corporate division of labor on the Collier matter that prevented it from presenting its evidence to the VEC. First, for example, different persons assigned to separate departments handled Collier's claim before the Virginia Department of Labor and Industry, worker's compensation, and the VEC. On brief Wells Fargo maintains that "[s]uch bifurcation of duties combined with the contemporaneous nature of the multiple claims adjudication processes prevented all interested corporate officials at Wells Fargo . . . from having any direct knowledge of all ongoing employment matters concerning Collier as of August 25, 1994," the date of the VEC hearings. Second, Wells Fargo maintains that the company representatives who were present at the hearing were unaware that there were other company persons who had knowledge of the case. These others were tied up that day on company

business in Washington, D.C., and Kansas City, Missouri. Thirdly, Wells Fargo contends that its representative at the hearing had only second hand knowledge of what had gone on with Collier because he did not serve as general manager at the branch office in Richmond during the time Collier was there. This, Wells Fargo adds on brief, allowed for:

> The channels of communication both within and outside Wells Fargo in arranging the irregular administrative appeals adjudication of an employment benefits matter simply and understandably were not established in a manner that would provide all interested parties with necessary information in a complete, perfect, and timely fashion.

The court finds no merit in Wells Fargo's complaint that the VEC committed error as a matter of law in failing to allow it to offer additional evidence. The VEC regulations, as it concedes, permits this only if the evidence is material, could not have been offered with due diligence, and would affect the outcome. Wells Fargo's contentions fail on account of these well known principles for reopening a case in judicial and administrative proceedings. At best, Wells Fargo was simply unprepared. It should not be heard to complain that it unfairly lacked an opportunity to advance its position through knowledgeable witnesses. These witnesses were at all times subject to its control. It is Wells Fargo's responsibility to have any and all persons present who have knowledge of the case.

There is no showing that Wells Fargo was ever without notice of the time and place the proceedings before the VEC were to take place.

Regarding fraud, Wells Fargo has not made out a case of extrinsic fraud. Essentially, Wells Fargo alleges that Collier perjured himself before the VEC. The *Jones* court clearly defines this as intrinsic fraud. Thus, this aspect of its fraud claim, if believed, constitutes intrinsic fraud. Moreover, as to Wells Fargo's other claimed elements of fraud, collusion and concealment of records, in its proffer, attached to this petition in the form of the Proffer of Proof and Affidavit of Donald Millinger, Wells Fargo rehashes its contentions and recites the evidence it could have with diligence but did not offer at the time of the hearings before the VEC. The question of Collier having the blessings of his superiors and the direction by them to him to keep things quiet regarding the true nature of the sale versus lease transaction were explored during the hearings is renewed in the affidavit, all of which was the subject of the hearing. This evidence included a possible inference that Collier colluded with others and they with

him, also a question which was before the VEC. So, whether these matters involve extrinsic fraud is of no moment. They were covered extensively in the hearings which afforded Wells Fargo an opportunity to present its position on them.

Regarding the issue of misconduct, the record of the proceedings before the agency reveals there is support for its decision to allow Collier benefits as there was evidence that Collier's superiors instructed him to show that the transaction with Allied Signal was a lease, not a sale. There is evidence that throughout the time of involvement Collier was monitored by the branch manager. There was also evidence that someone other than Collier booked the transaction as a lease instead of a sale and that the transaction was known and approved by three other persons in the company. In addition there was evidence that others entered the transaction in the company computer, not Collier. These facts, which again are to be deemed conclusive, do not comport with an employee "deliberately [violating] a company rule" nor do they demonstrate "acts or omissions . . . as to manifest a willful disregard of . . . the duties and obligations" Collier owed to his employer Wells Fargo under *Branch*. There is ample evidence in the record, fairly adduced, that Collier's actions did not amount to misconduct or a disqualification for unemployment benefits under law.

For these reasons there is no merit in any of the assigned points. The decision of the VEC in this case is affirmed.